**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**
**Civil Division**

_____

| | |
|---|---|
| **POTOMAC ELECTRIC POWER** | : |
| **COMPANY** | : |
| 701 Ninth Street, NW | : |
| Washington, D.C. 20068. | : |
| | : |
| **Plaintiff** | : |
| v. | : |
| | : |
| | : |
| **MIDWEST MOLE INC.** | : |
| 6814 W 350 North | : |
| Greenfield, IN 46140. | : |
| | : |
| Serve: **COGENCY GLOBAL INC.** | : |
| **Resident Agent** | : |
| 1519 York Road | : |
| Lutherville, MD 21093. | : |
| | : |
| | : |
| **Defendant** | : |

**Case No.:**
**The Honorable**

## COMPLAINT

COMES NOW Plaintiff, Potomac Electric Power Company, by and through its attorneys, Freeman & Freeman, P.C., and hereby files its Complaint against Midwest Mole Inc., and alleges as follows:

## I. PARTIES

1.      Plaintiff, Potomac Electric Power Company (hereafter, "Pepco"), is now, and was at all times referenced herein, a corporation duly organized and existing under the laws of the State of Virginia with its principle place of business in Washington, D.C.

2.      Upon information and belief, Defendant Midwest Mole Inc. (hereinafter "Midwest Mole") is now, and was at all times mentioned herein, an Indiana corporation doing business in

the state of Maryland, with its principal office located in Greenfield, Indiana, and was the sub-contractor in charge of construction, including ground excavation for the construction project located at or around  Democracy Blvd. near its intersection with I-270 in Montgomery County, Maryland.

## II. JURISDICTION AND VENUE

3.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through two (2) as if set forth in their entirety in this section.

4.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Pepco is incorporated under the laws of Virginia with its principal place of business in the District of Columbia.

5.     Midwest Mole is a company organized under the laws of Indiana with its principal place of business in Indiana.

6.      The amount in controversy, exclusive of interest and costs, exceeds the sum or value of Seventy-Five Thousand Dollars and Zero Cents ($75,000.00).

7.     Venue in the District of Maryland, Southern Division is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims are based occurred in the District of Maryland, Southern Division.

## III. NATURE OF ACTIONS

8.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through seven (7) as if set forth in their entirety in this section.

9.     Pepco is the regulated electric utility serving all of Montgomery County, Maryland and provides high voltage electricity and distribution services in Montgomery County, Maryland through transmission feeders or conductors that serve tens of thousands of customers, entire towns and neighborhoods, and oftentimes government agencies, hospitals, schools, fire departments, and other critical customers.   The transmission feeders are located in, among other things, underground ducts, conduits and manholes.

10.     At all times relevant hereto, Defendant Midwest Mole was engaged in a development and construction project in Maryland and was responsible for and had the non-delegable duty to provide for the development, construction, and supervision of all contractors and employees involved with the development and construction project.  Such work included, but was not limited to, the work relating to drilling and excavation to install sewer lines and in locating and marking all underground facilities including but not limited to Pepco's 4 WA/Duct banks, conduits and feeder cables in connection with its work. On or about February 3, 2018, in connection with its excavation and drilling work noted above, Midwest Mole struck Pepco's energized gas-filled 34,000 volt transmission cable and duct bank while conducting jack boring operations for sewer installation beneath Democracy Blvd. in Bethesda, Maryland near its intersection with I-270.

## COUNT I
## BORING AND EXCAVATION
## (NEGLIGENCE)

11.     PEPCO incorporates herein paragraphs one (1) through ten (10) as if fully stated herein in this Count.

12.     On or about February 3, 2018, Defendant Midwest Mole, while boring and excavating for sewer installation beneath Democracy Blvd. in Bethesda, Maryland near its intersection with I-270 ("the Job Site"), damaged Pepco's energized gas-filled 34,000 volt transmission cable and duct bank ("Pepco's Facilities").

13.     In connection with the work at the Job Site, Midwest Mole, through its employees, agents and/or servants, failed to pay full time and attention to the markings for Pepco's Facilities and/or obtain appropriate markings, the markings for which Defendant either saw or should have seen or obtained while operating their construction equipment, and for which Midwest Mole had the responsibility to arrange to be placed.

14.     To the best of Pepco's knowledge, information, and belief, Midwest Mole failed to maintain a clear distance from Pepco's Facilities while operating their construction equipment at the Job Site.

15.     Midwest Mole failed to plan its activities to avoid damage and minimize interference with Pepco's Facilities at the Job Site.

16.     As a result, Midwest Mole's actions damaged Pepco's Facilities through its operation of its construction equipment at the Job Site, resulting in serious damage to Pepco's Facilities, requiring them to be replaced and repaired at substantial cost and expense to Pepco.

17.     Midwest Mole either directly or through its agents, servants, and/or employees, owed a duty to PEPCO, both by common law and by statute, to exercise reasonable care in the planning, performance and oversight of its construction activities and operation of its equipment at the Job Site, which Midwest Mole should have recognized as necessary for the protection of Pepco's Facilities and to prevent damage to Pepco's Facilities.

18.     Midwest Mole breached its duty owed to Pepco by its acts of negligence, statutory violations and other wrongdoing, either directly or through its agents, servants, and/or employees, including, but not limited to:

a.      failure to pay full time and attention to any markings for Pepco's Facilities, the markings for which Midwest Mole either saw or should have seen while operating their construction equipment, and for which Midwest Mole had the responsibility to arrange to be marked and re-marked as necessary,

b.      failure to maintain a clear distance from Pepco's Facilities while operating its construction equipment,

c.      failure to keep a proper lookout,

d.      failure to maintain proper control over their construction equipment,

e.      failure to notify Pepco and make arrangements with Pepco to perform necessary measurements and/or operations to ensure that a safe distance is maintained between their construction equipment and Pepco's Facilities,

f.      failure to adequately supervise the operation of their construction equipment,

g.      failure to exercise reasonable care in planning, design, supervision, oversight, and performance of the Job Site which Midwest Mole should recognize as necessary to protect and prevent damage to Pepco's Facilities, and

h.      other negligent and/or intentional acts.

19.     Midwest Mole's above-mentioned acts of negligence and/or other wrongdoing created a dangerous and unsafe condition at the Job Site and increased the risk of serious personal injury and physical damage to Pepco's Facilities.

20.     Pepco relied upon Midwest Mole to carry out its duties owed to Pepco with due care.

21.     As a result of the negligence and/or other wrongdoing of Midwest Mole, Pepco's Facilities were damaged as described above.

22.     As a result of the above-mentioned negligent acts and/or other wrongdoing, Pepco has incurred serious damage to its Facilities, requiring the Facilities and related equipment to be replaced and repaired at substantial cost and expense.  Pepco further incurred damages associated with the repairs which required the closures of multiple lanes of roadway traffic for extended periods of time, including police presence.  In addition to the state and local transportation agencies governing these roadways, the incident occurred on roads traversing protected wetlands.  In order to access Pepco's Facilities and  infrastructure surrounding the Pepco Facilities to perform repairs, Pepco additionally incurred substantial cost and expense associated with  coordinating with a variety of environmental agencies, securing wetland permits, taking measures and building temporary infrastructure to satisfy environmental laws and protect against adverse impact to wetlands that would not be needed in other areas.  This included, but was not limited to, tree removal, silt fencing, grading, and construction of temporary roadways through wetlands for

access.

23.     Pepco's losses and damages were caused by the negligence and/or other wrongdoing of Midwest Mole and/or its agents, servants and/or employees, without any negligence of Pepco contributing thereto.

24.     WHEREFORE, PEPCO demands judgment against Midwest Mole in the amount of $3,161,225.37, plus interest and the costs of this action, and all other relief to which Pepco is entitled or as this Court deems just and proper.

## COUNT II
## DRILLING AND EXCAVATION
## (MARYLAND'S UNDERGROUND FACILITIES DAMAGE PREVENTION LAW, MD. CODE, PUBLIC UTIL. § 12-101 *ET SEQ.* NEGLIGENCE PER SE)

25.     Pepco incorporates herein paragraphs one (1) through twenty-four (24) as if fully stated herein in this Count.

26.     Midwest Mole was at all pertinent times a corporation authorized to conduct business in Maryland and was involved with, planned, supervised, authorized, and/or engaged in excavation on private property and/or in public space within Maryland, and as such is covered under the Maryland Underground Facilities Damage Prevention Law, Md. Code, Public Util. § 12-101 *Et. Seq.* (the "Act").

27.     Pursuant to § 12-124 of the Act, Midwest Mole was required to first initiate a ticket request by notifying the One-Call System serving the geographic area where the excavation or demolition was to be performed of its intent to perform the excavation or demolition.

28.     Pursuant to § 12-127(a) of the Act, Midwest Mole was not to begin excavation at the Job Site until Pepco's Facilities in the vicinity of the excavation were located and marked or re-marked, if necessary, or until the public utility operators, including Pepco, notified Midwest Mole that marking is unnecessary.

29.     Pursuant to §12-127(c)(2)  of the Act, Midwest Mole was  not to begin excavation at the Job Site through the use of mechanized equipment for excavation within 18 inches of an underground facility marking without first exposing the underground facility to its outermost surface by hand.

30.     Pursuant to §12-127(c)(3) of the Act, Midwest Mole was precluded from using mechanized equipment to excavate within 18 inches of the outermost surface of an exposed underground facility.

31.     Pursuant to § 12-124(a) of the Act, Midwest mole was not to begin excavation at the Job Site until it initiated a ticket request with Miss Utility of its intent to excavate at the Job Site.

32.     Pursuant to § 12-127(c)(1) of the Act, Midwest mole was required to exercise due care to avoid interference with or damage to an underground facility, including Pepco's underground facilities.

33.     Pursuant to § 12-127(d)(1) of the Act, Midwest Mole was required to immediately notify Pepco that it had caused damage or disturbance to Pepco's underground facilities in connection with its excavation.

34.     Midwest Mole performed an "excavation" as defined in § 12-101(f) of the Act and Pepco's transmission feeder was an "underground facility" as defined in § 12-101(o) of the Act.

35.     Midwest Mole violated § 12-124(a) of the Act by failing to initiate a ticket request with Miss Utility of its intent to excavate.

36.     Midwest Mole violated § 12-125 of the Act by failing to renew its expired ticket.

37.     Because Midwest Mole did not have a valid Miss Utility ticket during its excavation, it violated § 12-127(a) by commencing an excavation prior to receiving notification from Miss Utility confirming that Pepco had either marked its underground facilities or reported that it had no underground facilities in the vicinity of the excavation.  § 12-127(a) makes clear that "a person may begin excavation *only* after" he receives notification from Miss Utility that Pepco had marked its facilities or reported there are no such facilities in the vicinity of the excavation.

38.     Midwest Mole violated § 12-127(c)(1) of the Act by failing to exercise due care to avoid interference with or damage to an underground facility that had been marked by a Miss Utility ticket that had expired.

39.     Midwest Mole violated § 12-127(c)(2) of the Act by using mechanized equipment for excavation within 18 inches of an underground facility marking without first exposing the underground facility to its outermost surface by hand.

40.     Midwest Mole violated § 12-127(c)(3) of the Act by using mechanized equipment to excavate within 18 inches of the outermost surface of an exposed underground facility.

41.     Midwest Mole violated § 12-127(d)(1) of the Act by failing to immediately notify Pepco that it had caused damage or disturbance to Pepco's underground facilities in connection with Midwest Mole's excavation.   In fact, after receiving the low gas pressure alarm in its substation, Pepco had to survey the length of its entire feeder in search of the location of the damage—finally coming across Midwest Mole's construction site.   Had Midwest Mole simply contacted Pepco and alerted it of the damage as required by law, two full days of searching could have been avoided.

42.     Midwest Mole violated § 12-120(a)(1), by failing to perform its excavation in a careful and prudent manner.

43.     Pursuant to Md. Code, Public Util. § 12-120(a)(2), Midwest Mole is generally liable to Pepco for all damages that results from its excavation. Pursuant to § 12-120(b) of the Act Midwest Mole is negligent *per se* and is liable to Pepco for the total cost of repair of the underground facility.

44.     Pursuant to § 12-135(a)(1) of the Act, given that Midwest Mole failed to provide notice to Pepco as required under § 12-124(a) of the Act in digging on an expired ticket and invalid ticket pursuant to § 12-124(c)(3), it is *deemed negligent* in damaging, dislocating, and  disturbing Pepco's underground Facility.

45.     As a result of and as a direct consequence of Midwest Mole's violations of the Act as noted above, Pepco was caused to sustain serious and permanent damage to its Facilities, requiring them to be replaced at substantial cost and expense.

46.     Because of Midwest Mole's failure to comply with the provisions of the Act, it is negligent *per se* and liable by statute to pay Pepco for the actual cost and expense to replace Pepco's damaged facilities.

47.     WHEREFORE, Pepco demands judgment against Midwest Mole in the amount of $3,161,225.37, representing the total cost of the repair and/or replacement of the damaged facilities, pursuant to §12-101 *Et. Seq.* (the "Act"), plus interest and the costs of this action, and all other relief to which Pepco is entitled or as this Court deems just and proper.

## COUNT III TRESPASS TO CHATTELS

48.     Pepco incorporates herein paragraphs eight (8) through twenty-four (24) and twenty-five (25) through forty-seven (47) as if fully stated herein in this Count.

49.     Midwest Mole directly or through its agents, servants, and/or employees, owed a duty to Pepco, both by common law and by statute, to refrain from intentionally intermeddling with Pepco's chattels generally and the Pepco Facilities in particular, and impairing their condition, quality, and value, without Pepco's consent.

50.     At no time did Pepco consent to Midwest Mole intermeddling with or striking Pepco's Facilities.

51.     Midwest Mole breached its duty owed to Pepco by its acts of intentionally digging and excavating, through its jack-boring operations for sewer installation at the Job Site, and physically striking Pepco's Facilities without its consent (the "Trespass").

52.     Midwest Mole's above mentioned Trespass created a dangerous and unsafe condition at the Job Site and increased the risk of damage to Pepco's Facilities and in fact damaged Pepco's Facilities.

53.     Pepco relied upon Midwest Mole to carry out its duties owed to Pepco with due care and refrain from Trespassing on Pepco's Facilities.

54.     As a result of the aforesaid Trespass, Pepco's Facilities were damaged as described above.

55.     As a result of the aforesaid Trespass, Pepco has incurred serious damage to its Facilities, requiring its equipment to be replaced and repaired at substantial cost and expense.

56.     Pepco's losses and damages were caused by the aforesaid Trespass by Midwest Mole and/or its agents, servants and/or employees, without any consent by Pepco and without any wrongdoing of Pepco contributing thereto.

57.     WHEREFORE, Pepco demands judgment against Midwest Mole in the amount of $3,161,225.37, plus interest and the costs of this action, and all other relief to which Pepco is entitled or as this Court deems just and proper.


Dated this 16th day of October 2019.


Respectfully Submitted,

FREEMAN & FREEMAN, P.C.


By:     _/s/Mark Freeman/s/_____

Martin H. Freeman (Bar No. 00026)
Mark A. Freeman (Bar No. 13635)
100 Park Avenue, Suite 250
Rockville, Maryland 20850
(301) 315-0200 - Phone
(301) 315-0210 - Fax
Attorneys for PEPCO