UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **POTOMAC ELECTRIC POWER COMPANY,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Civil Case No. 8:19-cv-03037-AAQ** |
| **MIDWEST MOLE, INC.,** *et al.* | * | |
| **Defendants** | * | |
| | | |
| **MIDWEST MOLE, INC.,** | * | |
| **Third-Party Plaintiff/ Counter-Defendant** | * | |
| **v.** | * | |
| **WILLIAM B. HOPKE CO., INC.,** *et al.* | * | |
| **Third-Party Defendants** | * | |

## MEMORANDUM OPINION

This is a case concerning damage to a gas-filled cable owned by Plaintiff Potomac Electric Power Company ("Pepco") from boring and excavating at a construction site.  Third-Party Plaintiff and Defendant Midwest Mole Inc. ("Midwest Mole") alleges Third-Party Defendants William B. Hopke Co., Inc. ("Hopke"), UtiliQuest, LLC ("UtiliQuest"), and One Call Concepts Locating Services, Inc. ("One Call") are liable to Midwest Mole for any damages adjudicated against it in relation to damage caused to Pepco's facilities.  Pending before the Court are several motions, namely: (1) UtiliQuest's and One Call's Motions to Dismiss Midwest Mole's Third-Party Complaint, ECF Nos. 68, 81; (2) One Call's Motion to Dismiss Hopke's Crossclaim, ECF No. 82;

(3) Midwest Mole's Motion For Leave to File an Amended Third-Party Complaint, ECF No. 87; (4) UtiliQuest's Motion to Strike the Amended Crossclaim of Hopke, ECF No. 93; and (5) UtiliQuest's and One Call's Motions to Dismiss Hopke's Amended Crossclaim, ECF Nos. 95, 104. For the reasons discussed below, I shall deny UtiliQuest's and One Call's Motions to Dismiss Midwest Mole's Third-Party Complaint; grant Midwest Mole's Motion for Leave to File an Amended Third-Party Complaint; deny UtiliQuest's Motion to Strike Hopke's Amended Crossclaim; deny UtiliQuest's Motion to Dismiss Hopke's Amended Crossclaim; and grant, in part, and deny, in part, One Call's Motion to Dismiss Hopke's Amended Crossclaim.

## BACKGROUND

According to Midwest Mole's Complaint, Hopke hired the company as a subcontractor to bore, excavate, and horizontally drill at the intersection of I-270 and Democracy Boulevard in Montgomery County, Maryland (the "Project Site"). ECF No. 61, at ¶ 1, 13. On February 3, 2018, while performing such work, Pepco alleges Midwest Mole struck and damaged Pepco's 34,000-volt transmission cable and duct bank (the "Incident"). ECF No. 1, at ¶ 10.

Midwest Mole, however, denies that it was responsible for that damage and instead proffers a chain of events which led to the accident. ECF No. 61, at 6-9. Midwest Mole alleges Pepco had a contract with UtiliQuest at the time of the Incident that required the latter to locate and mark Pepco's facilities in Maryland, including at the Project Site, before any excavation was done. *Id.* at ¶ 15. In response to a pre-dig investigatory request from Hopke related to the Project Site, UtiliQuest identified and marked four of Pepco's underground facilities, but failed to identify four to six additional Pepco-owned facilities at the Project Site. *Id.* at ¶ 15-16, 23.

Relying on these markings, Hopke conducted preparatory potholing work in order to expose the marked facilities at the Project Site. *Id.* at ¶ 17. Midwest Mole also alleges that Pepco

had a contract with One Call requiring the latter to oversee Hopke's preparatory potholing work. *Id.* at ¶ 17. Once Hopke reached the layer of sand covering Pepco's facilities, One Call's employees instructed Hopke not to fully expose them, but rather to stop its work there. *Id.* at ¶ 19. They then instructed Hopke to "add five feet" to that depth measurement, rather than potholing and depth measuring to the fully exposed facilities. *Id.* Upon completion of the work, Hopke transmitted what it believed to be the correct depths of Pepco's facilities to Midwest Mole before it began boring at the Project Site. *Id.* at ¶ 20. Midwest Mole relied on these readings when it began excavating. *Id.* at ¶ 21. However, as noted above, unbeknownst at the time to both Hopke, and by extension Midwest Mole, there were additional lines that had not been marked or exposed. *Id.* at ¶ 23. Accordingly, when Midwest Mole began boring and excavating, it allegedly struck one or more of Pepco's unmarked facilities. *Id.* at ¶ 22.

On October 17, 2019, Pepco filed a Complaint against Midwest Mole in relation to the damage allegedly sustained to its transmission cable and duct bank. ECF No. 1. Midwest Mole subsequently filed a Third-Party Complaint against Third-Party Defendant Hopke, alleging that any such damage was the result of its failure to correctly report the depths of Pepco's underground facilities. ECF No. 61. at ¶ 11; ECF No. 13. Hopke followed with its own counterclaim against Midwest Mole. ECF No. 28.

On January 14, 2022, Midwest Mole filed a Third-Party Complaint against UtiliQuest and One Call. ECF No. 61. Midwest Mole's Third-Party Complaint asserted the following counts against UtiliQuest and One Call: (1) common law indemnification; and (2) contribution. ECF No. 61. UtiliQuest and One Call seek to dismiss those counts, having filed Motions to Dismiss on February 8, 2022, and March 7, 2022, respectively. ECF Nos. 68, 81. Midwest Mole filed its Opposition to UtiliQuest's Motion to Dismiss on March 22, 2022. ECF No. 73.

Relatedly, on March 17, 2022, Midwest Mole filed a Motion for Leave to File an Amended Third-Party Complaint.  ECF No. 87.  The Amended Complaint adds the following counts against UtiliQuest and One Call: (1) negligent performance of an undertaking; (2) negligent misrepresentation; and (3) breach of contract.  UtiliQuest filed its Opposition on March 22, 2022.  ECF No. 88.  Midwest Mole replied with a brief in support of its Motion on March 25, 2022.  ECF No. 89.

In addition, Hopke filed a Crossclaim against UtiliQuest and One Call on February 2, 2022.  ECF 65.  Hopke's original Crossclaim asserted the same counts as Midwest Mole, namely common law indemnification and contribution.  *Id.*  Hopke filed an Amended Crossclaim on March 30, 2022, likewise seeking to add counts of negligent performance of an undertaking, negligent misrepresentation, and breach of contract.  ECF No. 91.  UtiliQuest seeks to strike the Amended Crossclaim, ECF No. 93, or have it dismissed if not struck, ECF No. 95.  One Call also seeks to have Hopke's Amended Crossclaim dismissed.  ECF No. 104.  Hopke and Midwest Mole have filed Oppositions to One Call's Motions to Dismiss.  ECF Nos. 110 and 115.  Hopke adopted and incorporated by reference Midwest Mole's Oppositions to both UtiliQuest's and One Call's respective Motions to Dismiss Midwest Mole's Third-Party Complaint.  ECF Nos. 92, 110.[1]

On April 29, 2022, this case was transferred to my chambers for all further proceedings.  On July 14, 2022, I heard Oral Argument on all pending Motions.  ECF No. 114.  On August 18, 2022, the parties completed briefing on all pending motions.  ECF No. 119.

**STANDARD OF REVIEW**

---

[1] Pepco has also filed two papers on the multiple Motions pending.  ECF No. 107, 119.  In the second, Pepco provides factual background should the Court make any findings of fact for or against any party at this stage of the case.  ECF No. 119, at 1.  Although I have considered Pepco's position in its two papers, I make no findings of fact at the current stage.

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss a claim where there is a "failure to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged."  *Id.*  The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful.  *Id.*  Plaintiff must provide more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

In response to a motion to dismiss, a plaintiff may seek leave to file an amended complaint. In considering a motion for leave to file an amended complaint, district courts follow Fed R. Civ. P. 15(a), which provides that leave to amend "shall be freely given when justice so requires."  A motion to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *HCMF Corp. v. Allen,* 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).  Futile amendments are those that are "clearly insufficient or frivolous on [their] face."  *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986).  A motion to amend may also be denied as futile where the proposed amendments cannot withstand a motion to dismiss.  *Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995).

Pursuant to Fed. R. Civ. P. 12(f), the court may strike pleadings, or portions thereof that are "redundant, immaterial, impertinent, or scandalous[.]."  Rule 12(f) motions "generally will be not granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party."  *Gilman & Bedigian, LLC v. Sackett,* 337 F.R.D. 113, 116 (D. Md. 2020).

## DISCUSSION

### I.    Midwest Mole's Amendments Are Not Futile.

Midwest Mole seeks leave to file an Amended Third-Party Complaint against UtiliQuest and One Call adding three new counts against each for 1) negligent performance of an undertaking; 2) negligent misrepresentation; and 3) breach of contract.  ECF No. 87-1.  The claims against UtiliQuest arise out of UtiliQuest's alleged failure to properly mark all of Pepco's facilities.  *See, e.g.,* 87-1, at ¶ 53.  The claims against One Call arise out of One Call's alleged failure to properly review UtiliQuest's markings and allow Hopke to fully expose Pepco's facilities.  *See, e.g.,* ECF No. 87-1, at ¶ 64, 66.  UtiliQuest and One Call, in response, argue that Midwest Mole's amendments are futile because the amended claims are time barred and thus would not survive a motion to dismiss.  ECF No. 88, at ¶ 3.

At the motion to dismiss stage, typically, courts do not resolve affirmative defenses based on a statute of limitations.  *State Farm Mutual Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 557 (D. Md. 2019).  It is "relatively rare" for facts in a complaint to be sufficient to support ruling on an affirmative defense at the motion to dismiss stage.  *Id.*  Accordingly, a motion to dismiss based on "'the assertion that the cause of action is barred by the statute of limitations'" is normally not granted unless "'it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run.'"  *Id.* (quoting *Litz v. Maryland Dep't of*

*Env't*, 434 Md. 623, 641, 76 A.3d 1076, 1086 (2013)).  In this case, it is not clear on the face of the Complaint that the statute of limitations has run on Midwest Mole's claims.

UtiliQuest asserts that the amendments Midwest Mole seeks to add are claims for which the statute of limitations began to accrue on February 3, 2018 – the date that Midwest Mole allegedly struck Pepco's facilities.  ECF No. 88 at ¶ 7.  By seeking leave to add such claims on March 17, 2022, UtiliQuest argues that Midwest Mole is well beyond the three-year statute of limitations applicable under Maryland law.  *Id.* at ¶ 6-8.  Midwest Mole rejects UtiliQuest's assertions, maintaining that, due to the "discovery rule", their claims did not begin to run until, at earliest, October 18, 2022 – the date on which Pepco sued Midwest Mole.  ECF No. 89, at ¶ 12.

In Maryland, the discovery rule mandates the statute of limitation period begins "once the plaintiff has sufficient knowledge to have 'prompt[ed] a reasonable person to inquire further,'" and if pursued with "reasonable diligence, would have led to knowledge of the alleged [tort]."  *Doe v. Am. Nat. Red Cross*, 923 F. Supp. 753, 756 (D. Md. 1996).  If, in such a situation, the plaintiff fails to "seek out the facts supporting a cause of action, it can fairly be said that the plaintiff has inexcusably slept on his rights."  *Id.*

Pepco alleges Midwest Mole struck Pepco's cable and duct bank on February 3, 2018.  ECF No. 61, at ¶ 8-9.  However, drawing all inferences in Midwest Mole's favor, it is not clear from the face of the Complaint that Midwest Mole was on notice of its claim against UtiliQuest and One Call on the day of the accident.   *Id.*  It is possible, as Midwest Mole argues, that it did not reasonably become aware of any causes of action against UtiliQuest until after Pepco filed suit against it.  ECF No. 89, at ¶ 8.  Although Midwest Mole may have been aware that it had struck one of the Pepco's lines on the day of the accident, it is not clear from the face of the Complaint that they knew then that the failure was the result of UtiliQuest's and One Call's alleged failure to

properly mark the lines in question.  They may, for example, have reasonably believed at the time that the failure was their employees' or may simply not have had sufficient information to reasonably conclude that the damage was the result of UtiliQuest and Once Call's actions.  As the Complaint notes, it was not until "after the Incident occurred" that UtiliQuest "performed a damage investigation, which revealed that an additional four (4) to six (6) Pepco lines were at the location of the Project Site, but they were never marked[.]" ECF No. 87-1, at ¶ 26; *see also* ECF No. 89, at 2-3 (noting that Midwest Mole did not receive UtiliQuest's damage investigation report until it was produced in discovery in this case).

Likewise, regarding Midwest Mole's breach of contract claim against UtiliQuest and One Call, Midwest Mole argues that it was not aware, at the time of the accident, of any contractual relationship between Pepco and UtiliQuest requiring the marking of their lines at the Project Site, including the line at issue, until discovery was conducted in this case.  ECF No. 89, at ¶ 9; *see also* *Boyd v. Bowen*, 145 Md. App. 635, 669, 806 A.2d 314, 333 (2002) ("In Maryland, a cause of action for breach of contract accrues when the contract is breached, and when 'the breach was or should have been discovered.'") (quoting *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 648, 741 A.2d 1099, 1104 (1999)); *Kelly v. J.P. Morgan Chase Bank, N.A.*, No. 1483, 2017 WL 6016588, at *3 (Ct. Spec. App. Md. Dec. 5, 2017) ("A claimant should have reasonably known of a wrong when he or she has 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of *all facts* which such an investigation would in all probability have disclosed if it had been properly pursued.'") (emphasis added) (quoting *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981)).  To conclude, upon a motion to dismiss, that Midwest Mole had knowledge of the contract between Pepco, UtiliQuest, and One Call, and thus should have filed suit immediately after the incident would: 1) require the Court to

draw all inferences in favor of the non-moving party, contra to the applicable standard; and 2) encourage a plaintiff to act upon speculation in violation of the Federal Rules of Civil Procedure which requires plaintiffs to have a reasonable basis in fact before seeking relief against another party. Fed. R. Civ. P. 11(b)(3). Discovery may ultimately prove Midwest Mole's allegations regarding the scope of its knowledge prior to discovery false. However, the face of the Complaint does not support a definitive conclusion that Midwest Mole's claims are barred by the statute of limitations. As a result, Midwest Mole's Motion for Leave to File an Amended Third-Party Complaint shall be granted.

**II.      Fed. R. Civ. P. 12(f) Does Not Require Striking Hopke's Amended Crossclaim.**

Fed. R. Civ. P. 12(f) permits the court to strike from the pleadings any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" either on its own accord or pursuant to a motion made by a party. When deciding whether to grant a motion to strike, the court has "wide discretion." *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2017 WL 4467495, at *1, *3 (D. Md. Oct. 5, 2017). However, motions to strike under Rule 12(f) are generally viewed with disfavor, as striking a portion of a pleading is a "drastic remedy." *Id.* at *3 (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)). Typically, Rule 12(f) motions will not be granted unless the allegations challenged have "no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian,* 337 F.R.D. at 117.

UtiliQuest argues that although the deadline to amend pleadings under the Scheduling Order had not passed, Hopke should have sought leave from the court, absent the opposing party's written consent, pursuant to Fed. R. Civ. P. 15(a)(2). ECF No. 91, at 2. In particular, UtiliQuest

argues it was "not given an opportunity to brief why Hopke's amendments would be futile and why leave to file an Amended Cross-Claim should be denied by the court." *Id.* at 3.

Hopke's Amended Crossclaim, ECF No. 91, adds claims alleging negligent performance of an undertaking, negligent misrepresentation, and breach of contract against UtiliQuest and One Call, mirroring those in Midwest Mole's Amended Third-Party Complaint. ECF No. 87. Each claim is directly related to the Incident and thus is well within the subject matter of the controversy. In addition, UtiliQuest has not articulated how they will be prejudiced by the amended allegations other than noting they will not be able to make "a clear record as to the futile nature of Hopke's amendments." ECF No. 93-1, at 3. UtiliQuest has already had the opportunity to argue the futility of the same amendments in responding to Midwest Mole's Motion for Leave to File an Amended Third-Party Complaint. *Id*. at 3, n.2. UtiliQuest has also had the opportunity to raise any objections to the newly added claims in its pending Motion to Dismiss. ECF No. 95. Accordingly, UtiliQuest's Motion to Strike Mr. Hopke's Amended Crossclaim shall be denied.

### III.     Midwest Mole and Hopke Have Sufficiently Pled a Claim for Common Law Indemnity Against UtiliQuest and One Call.

Both UtiliQuest and One Call have filed Motions to Dismiss Midwest Mole's Third-Party Complaint and Hopke's Amended Crossclaim arguing, in part, that Midwest Mole and Hopke cannot recover against them for common law indemnity as a matter of law. ECF Nos. 68, 81, 95, 104. Specifically, UtiliQuest and One Call argue that Midwest Mole and Hopke's "active negligence" bars any claims for indemnity against third parties. ECF Nos. 68-1, at 4; 81-1, at 6; 95-1 at 5-7; 104-1, at 7-10.

In evaluating claims for indemnity in Maryland, courts apply the active/passive negligence rule, pursuant to which "a defendant whose negligence was 'passive' may seek indemnity from a defendant whose negligence was 'active.'" *Richards v. Freeman*, 179 F.Supp.2d 556, 560 (D. Md.

2002).  If a party committed active negligence, it cannot seek indemnification from another party. *Id.* (quoting *Franklin v. Morrison*, 350 Md. 144, 163, 711 A.2d 177, 185-87 (1998)).  In order to determine whether a particular tortfeasor's negligence is active or passive, some courts have referred "to the plaintiff's complaint against the defendant seeking to implead the third party." *Id.* (internal citations omitted).  Accordingly, if "the plaintiff's complaint alleged conduct by the third-party plaintiff that would constitute active negligence, or if it is clear from the circumstances revealed by the plaintiff's complaint that the defendant's (third-party plaintiff['s]) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate." *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 595 (D. Md. 1985).  More recently, however, "Maryland courts have expressly left open the question of whether – or when – the availability of indemnity turns only on allegations in the complaint, or includes facts found after a hearing involving the plaintiff and the tortfeasor seeking indemnity." *National Labor College, Inc. v. Hillier Group Architecture New Jersey, Inc.*, No. DKC 09–1954, 2012 WL 3264959, at *8 (D. Md. Aug. 9, 2012); *see also Board of Trustees, Community College of Baltimore County v. Patient First Corp.*, 444 Md. 452, 475 n. 14, 120 A.3d 124, 137 n.14 (Md. 2015) (rejecting third-party argument that the Court of Appeals should look only to the "unproven allegations of" Plaintiff's complaint in determining whether third-party plaintiff sufficiently alleged a claim for indemnity: "the Court of Special Appeals expressly cautioned that it was not answering the question generally whether the right to implied indemnity should be based on the tort plaintiff's allegations or on facts as found after a trial and that it was confining its holding to the facts of this case." (internal quotation marks omitted)).

UtiliQuest and One Call argue that because the activities which led to accident – boring, excavation and potholing – were "active", Midwest Mole and Hopke could not have been passively

negligent.  ECF No. 81-1, at 8; ECF No. 95-1, at 7.  The argument conflicts with recent decisions of this Court.  "At this stage of the litigation [i.e., the dismissal stage], it is sufficient that [the plaintiff] has alleged negligence claims against [the defendant/third-party plaintiff] and that [the defendant/third-party plaintiff], in turn, has alleged that [the third-party defendant] was the principle tortfeasor."  *National Labor College*, 2012 WL 3264959, at *8.

Even assuming that such a determination is proper at this stage, this argument incorrectly simplifies the distinction between "active" and "passive" negligence.  "No single definition or rule of law identifies all instances in which one of two persons, who are liable in tort for the same legally cognizable harm, will be able totally to shift the loss to the other party."  *Franklin*, 711 A.2d at 183.  "The basis for indemnity between tortfeasors 'is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay.'"  *Id.* at 182 (quoting Restatement (Second) of Torts § 886B cmt. c (1979) (Restatement)).  Maryland has looked to W.P. Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 51, at 343–44 (5th ed. 1984) (Prosser & Keeton), which describes the problem as follows:

> [I]t is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not.  It has been said that it is permitted only where the indemnitor has owed a separate duty to the indemnitee; that it is based on a 'great difference' in the gravity of the fault of the two tortfeasors; or that it rests upon a disproportion or difference in character of the duties owed by the two to the injured plaintiff.  Probably none of these is the complete answer, and, as is so often the case in the law of torts, no one explanation can be found which will cover all of the cases.

*Franklin*, 711 A.2d at 183.  Although there remains ambiguity as to the outer reaches of when a third party-plaintiff may seek indemnity from another defendant, at base, the distinction between active and passive negligence turns on whether the third-party plaintiff was negligent or whether

its liability is entirely dependent on the negligence of another defendant. *See Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 383, 942 A.2d 722, 731 (Md. 2008) (quoting § 96 of the Restatement of Restitution) ("A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."); *Franklin*, 711 A.2d at 187 (quoting *Hood v. Dealers Transp. Co.*, 472 F.Supp. 250, 251-52 (N.D. Miss. 1979) ("When the negligence of two or more persons in the operation of motor vehicles on the highway results in injury or damage to a person, it is an unusual case where the negligence causing the injury does not result from the activities of joint tortfeasors as distinguished from an active-passive negligence situation."); *Hartford Acc. and Indem. Co. v. Scarlett Harbor Associates Ltd. Partnership*, 109 Mapp. 217, 277, 674 A.2d 106, 136 (Ct. Spec. App. Md. 1996) ("where a developer whose property is in violation of the building code has committed no independent negligence, and is required to pay damages solely because of its breach of its nondelegable duty to comply with the code, the developer may obtain indemnification from its independent contractor whose negligence actually caused the breach"); *Wallenis Bremen G. m. b. h. v. U.S.*, 409 F.2d 994, 998 (4th Cir. 1969) ("we note that indemnity in the law of torts is, of course, the name given to the determination of primary and secondary liability.  Unlike contribution, indemnity is the shifting of the entire loss to another who ought to bear it because (a) he expressly or impliedly agreed to do so, or (b) his fault is 'primary' and relatively more grievous, and the other's fault is 'passive' or 'constructive', or 'vicarious' or 'insulated'"); *Royal Ins. Co. of America v. Miles & Stockbridge, P.C.*, 133 F.Supp.2d 747, 771 (D. Md. 2001) ("A party has a right to tort-based indemnification when, without personal fault, it 'has become subject to tort liability for the unauthorized and wrongful conduct of

another.'"); *Pyramid Condominium Ass'n*, 606 F.Supp. at 597 ("it is widely held that indemnification is not available to intentional or grossly negligent tortfeasors.").

Simply because the third-party plaintiff took some affirmative action itself does not automatically make its negligence "active." *See Gardenvillage Realty Corp. v. Russo*, 34 Md.App. 25, 40, 366 A.2d 101, 104-05, 111 (Md. 1976) (holding, in case involving injuries to tenant and invitee when a porch collapsed, negligence of residence's owner and builder was "passive" and negligence of supplier of concrete support slab was "active," thus entitling owner and builder to indemnification from supplier); *KeraLink Int'l, Inc. v. Stradis Healthcare, LLC*, No. CCB-18-2013, 2022 WL 2275593, at *2 (D. Md. Jun 23, 2022) ("This distinction between types of negligence constituted the basis for the court's determination that Geri-Care, as an actively negligent manufacturer of the non-sterile eyewash, was more culpable than Stradis, a passively negligent entity that repackaged the non-sterile solution into Stradi-Paks."). For example, in *Hartford Acc. and Indemn. Co.*, the plaintiff argued that the defendant

> falsely told unit purchasers that the Condominium would conform to plans and specifications. This claim focuses not on conduct for which the Defendants were only secondarily or passively liable, but instead on the Defendants' *own* primary, active deception. In other words, the CPA claim attacks the Defendants' wrongful acts in deceiving their customers.

674 A.2d at 136. Despite these allegations in the plaintiff's complaint, the Court found that nonetheless, the defendant created a triable issue of fact as to indemnification because under the facts of the case, any wrongful action it took could have been based on the actions of the third-party defendant:

> [T]o incur liability, the Defendants did not have to know of the falsity of their representations. Nor must they have had the intent to deceive their purchasers in order to violate the CPA . . . If the Defendants stated erroneously and falsely that the Condominiums conformed to plans and specifications, they may have violated the

> CPA, notwithstanding the fact that their misrepresentations were unintentional. . . . In such a case, they may be able to recover indemnification from a contractor whose faulty work was the primary cause of the lack of conformity to plans and specifications and the resulting liability of the Defendants.

*Id.*

Applying these principles, at the motion to dismiss stage, Midwest Mole's and Hopke's claims against UtiliQuest and One Call for indemnity are not subject to dismissal.  For a claim for indemnification to be dismissed at the motion to dismiss stage, it must be "clear from the alleged underlying *facts*, regardless of the theories alleged, that the third-party plaintiff could not possibly be held liable on any passive negligence theory."  *Max's of Camden Yards v. A.C. Beverage*, 172 Md.App. 139, 153-54, 913 A.2d 654, 663 (Md. Ct. Spec. App. 2006) (emphasis in original).  Pepco, in its complaint, alleges that "in connection with its excavation and drilling work . . . , Midwest Mole struck Pepco's energized gas-filled 34,000 volt transmission cable and duct bank while conducting jack boring operations."  ECF No. 1, at ¶ 10.  Pepco does not limit its allegations against Midwest Mole to solely the manner in which the drilling, boring and excavation was conducted, but specifically asks that it be held liable for the marking, or the failure to mark Pepco's lines accurately.  Pepco specifically alleges that the damage was the result of Midwest Mole's failure "to pay full time and attention to the markings for Pepco's Facilities" or "obtain appropriate markings, the markings for which Defendant either saw or should have seen or obtained while operating their construction equipment, and for which Midwest Mole had the responsibility to arrange to be placed."  *Id.* at ¶ 13; *id.* at ¶ 18(a) (alleging Midwest Mole failed to "pay full time and attention to any marking for Pepco's Facilities . . . for which Midwest Mole had the responsibility to arrange to be marked and re-marked as necessary.");  *id.* at ¶ 18(b) (alleging Midwest Mole was negligent for failing to maintain a clear distance from Pepco's facilities while

operating its construction equipment).   However, as Midwest Mole alleges, UtiliQuest and One Call were responsible for marking Pepco's lines, and they failed to adequately mark all of Pepco's lines which, in turn, led to Midwest Mole striking them.   ECF No. 87-1, at ¶ 26 ("Upon information and belief, after the Incident occurred, UtiliQuest performed a damage investigation, which revealed that an additional four (4) to six (6) PEPCO lines were at the location of the Project Site, but they were never marked by UtiliQuest, or identified by . . . One Call."); ECF No. 61, at ¶ 17-22 (alleging any failure by Midwest Mole was the result of the negligence of One Call, who directed inadequate potholing work).   Allegedly, Midwest Mole's mistake was simply that they failed to discover that UtiliQuest and One Call had failed to mark all of Pepco's facilities properly. *See Max's of Camden Yards*, 913 A.2d at 659 ("Frequently occurring situations in which a right to implied indemnity between tortfeasors has been recognized include a tortfeasor liable . . . for failing to discover a defect in work performed by another.").

Nor does the fact that some of the bases on which Pepco seeks to hold Midwest Mole liable are independent from UtiliQuest's and One Call's alleged negligence dictate a different result.   *See* ECF No. 81-1, at 8 (arguing that Pepco alleges Midwest Mole, among other things, failed to comply with Maryland state law by initiating a ticket request before excavating).   As noted above, the relevant question, upon a motion to dismiss, is whether, given the allegations in Pepco's complaint, Midwest Mole and Hopke may hold UtiliQuest and One Call liable on any passive negligence theory.   Dismissal of a third-party defendant, at this time, is appropriate only if there is no possibility that they may be held liable.   *See American Home Assur. Co. v. SUI Enterprise Co., Ltd.*, No. PWG 12–817, 2014 WL 1793127, at *2 (D. Md. May 5, 2014) ("if it is clear from the complaint that this party's liability would *only* arise from proof of active negligence, then there is no valid claim for indemnity." (emphasis added)).   As discussed above, Midwest Mole and Hopke

have sufficiently alleged bases of liability that are directly tied to what they allege were UtiliQuest's and One Call's actions.  That Pepco may ultimately hold Midwest Mole liable under a different theory does not merit UtiliQuest's and One Call's dismissal before it has been determined on what basis Midwest Mole is actually liable.

This analysis is equally applicable to Hopke's Crossclaim against UtiliQuest and One Call. Midwest Mole, in its Third-Party Complaint against Hopke, alleges that it "conducted initial potholing at the Job Site and reported incorrect depths of Pepco's duct banks to Midwest [Mole]." ECF No. 13, at ¶ 9.  "Based on the information provided by Hopke, in or around January 2018, Midwest [Mole] began to conduct boring and excavation underneath Democracy Blvd at the Job Site."  *Id.* at ¶ 10.  As a result, "while Midwest was conducting boring and excavation at the Job Site, Pepco's energized gas-filled 34,000-volt transmission cable and duct bank ("Pepco's Facilities") was allegedly struck."  *Id.* at ¶ 11.  Hopke, in turn, alleges that the only reason it provided inadequate numbers to Midwest Mole was because UtiliQuest failed to mark Pepco's facilities properly, and One Call subsequently failed to correct these errors and prevented it from potholing to sufficient depths to uncover all facilities.  *See* ECF No. 91, at ¶ 20 ("Test pitting subsequently performed by Hopke to expose the marked underground facilities (overseen by One Call), and the ultimate boring work done by Midwest, relied upon the location services and markings of UtiliQuest which indicated that there were only four . . . PEPCO lines at the Project Site."); *id.* at ¶ 30 ("UtiliQuest's failure to properly and correctly identify, locate, and mark all PEPCO facilities at the Project Site, including those damaged in the Incident, were the active and primary cause of the Incident."); *id.* at ¶ 58 (alleging that any judgment against Midwest Mole for damage to Pepco's facilities is a result of: "i) One Call's refusal to allow Hopke to pothole to a sufficient depth to expose the PEPCO's underground facilities in accordance with industry

standard and the Maryland Public Utilities Code; and ii) One Call's failure to relay accurate information to Hopke and/or Midwest regarding the existence and location of PEPCO's underground facilities at the Project Site, including those allegedly damaged in the Incident."). Accordingly, accepting Midwest Mole's and Hopke's allegations as true, as I must at the motion to dismiss stage, I cannot determine that their claims for indemnity against UtiliQuest and One Call would necessarily fail.

The cases UtiliQuest and One Call cite do not undercut this conclusion.  UtiliQuest and One Call rely primarily on *Pyramid Condominium Ass'n* to establish that Midwest Mole and Hopke committed active negligence.  ECF Nos. 68-1, at 4; 81-1, at 6-7; 95-1 at 5-7; 104-1, at 7-10.  In *Pyramid Condominium Ass'n*, a condominium board filed suit against several defendants alleging, among other things, that they negligently designed, constructed and sold a condominium complex.  606 F.Supp. at 594.  Two of the defendants filed a third-party complaint against two banks who assisted in financing the project.  *Id.*  The court dismissed the claims because the plaintiff's complaint alleged that the defendants "participated in both the design and construction of the building and as a result had knowledge of the substandard and faulty construction."  *Id.* at 596.  Whether and how the banks financed the project had no impact on the defendants' design and construction of the building.  As the court noted, "[t]here is no dispute that the construction cycle for the Pyramid complex had been completed before [the bank] purchased the note" related to the building.  *Id.* at 595.  Accordingly, the third-party plaintiffs were not "situated in the sequence of events in such a way as to allow a trier of fact to conclude that it [was] liable under any theory *other than* one of active negligence."  *Id.* (emphasis added); *see also id.* at 597 ("In its complaint, Pyramid has not alleged specifically that ATEC engaged in acts constituting only passive negligence *nor can such an inference reasonably be drawn* from the allegations in the

complaint." (emphasis added)).   In this case, unlike *Pyramid Condominium Ass'n*, Pepco's Complaint allows for the inference that both Midwest Mole and Hopke were situated within the sequence of events in such a way as to permit the trier of fact to conclude they were passively negligent.

Likewise, *Bd. of Tr. of Baltimore Cty. Cmty. Coll. v. RTKL Assoc., Inc.*, which UtiliQuest also cites, is distinguishable.  ECF No. 68-1, at 5.  The case concerned an appeal of a jury verdict as opposed to a motion to dismiss.  80 Md.App. 45, 559 A.2d 805 (1989).  Further, the court noted that the jury, in that case, could have determined from the evidence that the negligence of at least one of the defendants was passive in nature.  *Id.* at 811.  Accordingly, the case supports delaying a decision on whether Midwest Mole and Hopke were actively negligent, rather than dismissing their claims, as a matter of law, at the motion to dismiss stage.[2]

For the foregoing reasons, UtiliQuest and One Call's Motions to Dismiss counts I and VI of Midwest Mole's Third-Party Complaint and Hopke's Amended Crossclaim shall be denied.

**IV.     Midwest Mole and Hopke Have Sufficiently Pled a Claim for Contribution.**

---

[2] The remainder of cases cited by UtiliQuest and One Call generally support the proposition that active and primary tortfeasors cannot recover for common law indemnity but are too distinct to dictate a particular result in this case.  *See, e.g., Adams v. NVR Homes, Inc.*, 135 F.Supp.2d 675, 712 (D. Md. 2001) (finding claim for indemnification was not proper where "nothing in the record indicates that the [third party defendants] had any responsibility whatsoever with respect to the homes or yards of the [third-party plaintiffs]"; *Richards*, 179 F.Supp.2d at 560 (concluding that claim for negligence did not lie because plaintiff alleged third-party plaintiff committed negligence entirely unrelated to third-party plaintiff's claims against third-party defendant); *Franklin,* 711 A.2d at 187 ("When the negligence of two or more persons in the operation of motor vehicles on the highway results in injury or damage to a person, it is an unusual case where the negligence causing the injury does not result from the activities of joint tortfeasors as distinguished from an active-passive negligence situation." (quoting *Hood v. Dealers Transp. Co.*, 472 F.Supp. 250, 252 (N.D. Miss. 1979)).

UtiliQuest and One Call next argue that Midwest Mole's and Hopke's claims for contribution against them must be dismissed.  ECF No. 68-1, at 6-7; 81-1, at 9-10; 95-1, at 7-9; 104-1 at 10-12.  They specifically posit that, because their legal responsibility to Pepco arises in contract, not tort, they cannot be subject to a claim for contribution.  *Id.*  Midwest Mole, in response, argues that although UtiliQuest owed Pepco a duty in contract, it also owed Pepco a duty in tort.

"In Maryland, contribution is available among joint tortfeasors under the Uniform Contribution Among Tort-Feasors Act ('UCATA')."  *Richards*, 179 F.Supp.2d at560.  "[C]ontribution rests on common liability, not on joint negligence or joint tort.  Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds."  *Id.* (quoting *Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 687, 756 A.2d 526, 534 (2000)) (internal quotation marks omitted).

As noted, the parties dispute whether UtiliQuest owed Pepco a duty in tort, in addition to a duty in contract.[3]  "A contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise to a tort action must have some independent basis."  *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 654, 741 A.2d 1099, 1107 (1999).  However, tort duties can arise even where

---

[3] Midwest Mole also appears to argue that it can proceed on a contribution claim against UtiliQuest because UtiliQuest owed Midwest Mole a duty to reliably mark the location of Pepco's facilities.  *See* ECF No. 73, at 9-10 ("PEPCO and the contractors working in the proposed excavation area – including, but not limited to, Midwest Mole and Hopke – relied upon UtiliQuest's marks.  UtiliQuest cannot now limit itself to the terms and conditions of any purported contract with PEPCO, arguing that any duty owed was to PEPCO alone, when others are clearly relying on its work.").  Regardless of whether such a duty was owed, the existence of such a duty does not support a claim for contribution because, as discussed above, the relevant question for the purposes of a contribution claim is whether both the defendant and the third-party defendant owed a duty to tort to the original plaintiff – not whether the third-party defendant owed a duty to the third-party plaintiff.

a contractual relationship already exists, if such a duty is "imposed by or arises out of the circumstances surrounding or attending the transaction." *Slacum v. Eastern Shore Trust Co.*,163 Md. 350, 351, 163 A. 119, 120 (1932). When a defendant operates on the basis that a contractual obligation exists, undertakes that obligation, and violates the appropriate standard of care for such an obligation, a plaintiff "may, in some circumstances, maintain a tort action." *Mesmer v. Maryland Auto. Ins. Fund,* 353 Md. 241, 254, 725 A.2d 1053, 1059 (1999).

In determining whether a tort duty should be recognized in addition to a contractual duty, the two major considerations are "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 307, Md. 527, 534, 515 A.2d 756, 759 (1986). Accordingly, Maryland bars tort liability for purely economic loss unless: "(1) the parties are in privity with one another; or (2) the alleged negligent conduct resulted in 'physical injury or risk of severe physical injury or death.'" *Advantage Environmental Consultants, LLC v. Ground Zero Field Services, LLC*, No. SAG-21-0700, 2021 WL 4846810, at *6 (D. Md. Oct. 15, 2021) (quoting *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 612, 155 A.3d 445, 452 (2017)).

### A. Midwest Mole and Hopke Do Not Allege a Sufficient Nexus Between UtiliQuest and/or One Call and Pepco.

"Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Jacques*, 515 A.2d at 759; *see also Plum House IV, Inc. v. Wells Fargo Merchant Servs., LLC*, No. CCB-15-2294, 2016 WL 337492, at *4 (D. Md. Jan. 28, 2016) (quoting *Chubb & Son v. C & C Complete Servs. LLC*, 919 F. Supp. 2d 666, 675 (D. Md. 2013) (quoting *Gruppo Essenziero Italiano, S.p.A. v. Aromi D'Italia, Inc.*, No. CCB-08-65, 2011 WL 3207555, at *8 (D. Md. July 27, 2011))) ("courts applying Maryland law have 'attempted to limit remedies to contract

law where the loss is purely economic and the parties engaged in arms-length commercial bargaining.'"). "Maryland courts have recognized an 'independent duty' in several contexts – including those involving professional occupations, vulnerable parties, and principal-agent relationships." *Chevron U.S.A. Inc., v. Apex Oil Company, Inc.*, 113 F.Supp.3d 807, 823 (D. Md. 2015); *see also Jacques*, 515 A.2d at 763 ("The law generally recognizes a tort duty of due care arising from contractual dealings with professionals such as physicians, attorneys, architects, and public accountants."). "[I]n those occupations requiring peculiar skill, a tort duty to act with reasonable care will be imposed on those who hold themselves out as possessing the requisite skill." *Jacques*, 515 A.2d at 763.

Although Midwest Mole alleges that UtiliQuest had a "duty to identify and provide accurate locate marks of PEPCO's facilities in the areas of the proposed excavation", ECF No. 73, at 9, the relationship between Pepco and UtiliQuest or One Call is not akin to those in which Maryland has recognized that a duty may arise in tort. The most important consideration is the relative power dynamic between the parties. Accordingly, courts, applying Maryland law, have refused to recognize an independent duty where the contract is between parties who are both sophisticated. *See OceanFirst Bank, N.A. v. Brink's Inc.*, No. DLB-21-3275, 2022 WL 4465897, a *4-5 (D. Md. Sept. 26, 2022) (refusing to recognize independent duty where "both OceanFirst and Brink's are sophisticated, commercial entities"); *Plum House IV*, 2016 WL 337492, at *4 (rejecting negligence claim where the parties were "commercial enterprises that engaged in an "arms'-length transaction" and were equally sophisticated); *Nat. Prod. Sols.v. Vitaquest Int., LLC*, No. CCB-13-436, 2014 WL 6383482, at *9 (D. Md. Nov. 13, 2014) (rejecting negligence claim arising out of "a plain vanilla manufacturing relationship between 'sophisticated parties in positions of equal bargaining strength'") (quoting *Martin Marietta Corp. v. Int'l Telecomms.*

*Satellite Org.*, 763 F. Supp. 1327, 1332 (D. Md. 1991), *aff'd in part, rev'd in part*, 991 F.2d 98 (4th Cir. 1992)); *Chubb & Son*, 919 F. Supp. 2d at 675 (same).[4]

Likewise, although Maryland courts have not decided whether a duty arises in the context of boring and excavation, they have rejected liability in similar contexts if the Plaintiff asserts only economic loss.  For example, in *Balfour Beatty Infrastructure*, the Court of Appeals refused to recognize a duty in the public construction context, absent a longstanding relationship between the parties, despite the fact that the plaintiff may have relied on the defendant's designs.  155 A.3d at 461. Accordingly, the Court granted the defendant's Motion to Dismiss.  *Id.; see also Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 282, 609 A.2d 297, 300 (1992) (indicating in dicta that a firm which has entered into a contract to provide safety engineering services to the owner of a property in connection with a construction project is not ordinarily liable for injuries suffered by the employee of a contractor during the course of construction); *Jones v. Parsons Transp. Group, Inc.*, No. JFM-03-526, 2004 WL 1254029, *2 (D. Md. May 20, 2004) (finding that defendant who contracted to monitor the work of the contractors to assure quality workmanship in conformance with the plans and specifications for the projects, agreed to review the safety plans developed by the contractors and observe activities to assure compliance did not have a duty in tort to a construction worker who was injured on the construction site).

### B. Midwest Mole and Hopke Sufficiently Allege that UtiliQuest and One Call's Actions Created a Serious Risk of Physical Harm.

---

[4] Although I conclude that under the relevant precedents a duty has not been recognized between two companies such as Pepco and UtiliQuest or One Call, given the inequitable balance of power between a utility company or a company responsible for marking power lines and an individual employee of either, the latter may be owed a duty under the Court of Appeals' decision in *Jacques v. First Nat'l Bank*, 515 A.2d 756 (1986).

As noted above, even if two parties are not in sufficient privity, a defendant may owe another party a duty if its actions exposed it to a serious risk of physical harm.  Pepco alleges that Midwest Mole's actions "created a dangerous and unsafe condition at the Job Site and increased the risk of serious personal injury[.]"  ECF No. 1, at ¶ 19.  Although Pepco does not allege that its employees were present when the Incident occurred, it alleges that after the Incident Pepco incurred damages from being responsible for "the closures of multiple lanes of roadway traffic for extended periods of time," and that its employees had to perform repairs including "taking measures and building temporary infrastructure to satisfy environmental laws and protect against adverse impact to wetlands that would not be needed in other areas."  *Id.* at ¶ 22.  Midwest Mole and Hopke, in turn, allege that the serious risk of physical harm was not their fault, but the result of UtiliQuest's and One Call's actions.  ECF No. 87-1, at ¶ 16 (alleging that UtiliQuest was responsible for accurately locating and marking underground facilities at the Project Site, including all of Pepco's facilities, for excavators and others performing work at the Project Site, to reduce the risk of damage and ensure safe excavations); ECF No. 91, at ¶ 17 (same).  Accordingly, the Complaint and the Third-Party Complaint's allegations sufficiently allege that UtiliQuest and One Call's actions creates a serious risk of physical harm to Pepco's employees and thus, they owed Pepco a duty.

### C.  Midwest Mole and Hopke Sufficiently Allege that UtiliQuest and One Call Owed Pepco a Duty Pursuant to the Miss Utility Act.

Additionally, Midwest Mole argues that UtiliQuest and One Call owed Pepco a duty pursuant to Md. Code Pub. Util. §12-120 *et seq*.  ECF No. 73, at 10.  Under Maryland law, in order for the breach of a statutory duty to establish evidence of negligence, the injured party must be a member of the class of persons the statute was designed to protect, *Erie Ins. Co. v. Chops*, 322 Md. 79, 84, 585 A.2d 232, 234 (1991), and the statute must set forth mandatory acts clearly for the

protection of a particular class of persons rather than the public as a whole.  *Remsburg v. Montgomery*, 376 Md. 568, 584, 831 A.2d 18, 27 (2003).

Pepco, a public service company that owns underground facilities, is clearly among the class of entities that the Miss Utility statute seeks to protect.  As the Court of Appeals has explained, §12-120 *et seq.*, commonly known as the "Miss Utility Act[,] was enacted by Chapter 863 of the Acts of 1974, and originally codified as Md. Code (1969 Repl. Vol., 1974 Cum. Supp.), Art. 78, § 28A."  *Board of County Com'rs of Garrett County, Md. v. Bell Atlantic-Maryland, Inc.*, 346 Md. 160, 167, 695 A.2d 171, 175 (1997).  "Although § 28A has undergone various modifications since its enactment, its primary objectives have not."  *Id.*  The primary purpose of the Act is to "protect underground facilities of public service companies from destruction, damage or dislocation in order to prevent: (1) Death or injury to persons; (2) Property damage to private and public property; and (3) Loss of services of public service companies to the general public."  *Id.*, *see also* Md. Pub. Util. § 12-120(b) ("If an underground facility is damaged by a person that fails to comply with this subtitle, the person is deemed negligent and is liable to the owner for the total cost of repair of the underground facility, unless the owner has failed to become an owner-member in accordance with § 12-123 of this subtitle.").  The statute prioritizes the protection of public utilities' property, allowing excavators to be held liable, even if they complied with the Act's terms, if they failed to perform the excavation in a careful and prudent manner.  Md. Pub. Util. § 12-120(d); *see also Board of County Com'rs of Garrett County*, 695 A.2d at 175 (explaining that the Act "discourages would-be excavators from noncompliance upon peril of liability for damages and civil penalties.").

Additionally, the Act sets forth mandatory acts an alleged contract-locator, such as UtiliQuest or One Call, is required to take for the protection of Pepco's facilities.  Section 12-120

25

specifically provides that "if an underground facility is damaged by a person that fails to comply with this subtitle, the person is deemed negligent and is liable to the owner for the total cost of the repair of the underground facility."  Md. Pub. Util. § 12-120.  The subtitle requires, among other things, that "an owner-member" – in this case, Pepco – "or its contract-locator" – in this case, UtiliQuest or One Call – "mark [the owner's] underground facility if a proposed excavation or demolition" is within five feet of the underground facility or if the work is so near to the facility that it may be damaged or disturbed.  *Id.*, § 12-126.  Although UtiliQuest argues that "[n]owhere in the Miss Utility Statute does it juxtapose the duty of an 'owner-member' to mark its underground facilities onto the contract locator," ECF No. 78-1, at 8, it ignores that the statute explicitly discusses the responsibilities of contract-locator and specifically contemplates that the contract-locator shall be responsible for marking an owner-member's facilities if it agrees to do so, Md. Pub. Util. § 12-126; *see also id.*, § 12-101 ("Contract locator . . . means a person contracted by an owner specifically to determine the approximate horizontal location of the owner's underground facilities as specified in the ticket issued by the one-call system."), which Midwest Mole alleges UtiliQuest and One Call did.

In addition, Midwest Mole and Hopke argue that One Call took further action in contravention of other portions of the statute also designed to protect Pepco's facilities.  Pursuant to Md. Pub. Util. § 12-127(c), "[b]efore using mechanized equipment for excavation or demolition within 18 inches of an underground facility marking, a person shall expose the underground facility to its outermost surfaces by hand or other nondestructive techniques."  Md. Pub. Util. Code. §12-127(c)(3).  Midwest Mole and Hopke allege that once Hopke reached the "sand layer" above Pepco's facilities, One Call's representative instructed Hopke to stop potholing, even though Hopke had not yet complied with the terms of the statute.  ECF No. 61, at ⁋ 19.  As a result,

Midwest Mole and Hopke allege that Pepco's facilities were struck.  Although One Call raises a variety of arguments in response regarding the differing scope of its responsibilities towards the various types of Pepco facilities at the Project Site, ECF No. 81-1, at 10, the arguments are unsupported, *see id.* (stating without support that "the 64KV Lines, which were the only line OCCLS was responsible for, were not struck by MMI in this matter"), and thus would require drawing inferences against the non-moving party, in contra to the applicable standard at this stage of the case.

As Midwest Mole and Hopke have alleged a cognizable duty which UtiliQuest and One Call owed Pepco, UtiliQuest's and One Call's Motions to Dismiss counts II and VII of Midwest Mole's Amended Third-Party Complaint and Hopke's Amended Crossclaim shall be denied.[5]

**V.    Hopke Has Successfully Pled Claims for Negligent Performance of an Undertaking, Negligent Misrepresentation, and Breach of Contract Against UtiliQuest, but Some of its Claims Against One Call Are Barred by the Statute of Limitations.**

The remaining arguments in UtiliQuest and One Call's Motion to Dismiss concern Hopke's amended-in claims for negligent performance of an undertaking, negligent misrepresentation, and breach of contract.  UtiliQuest and One Call specifically assert that these claims are barred by the relevant statute of limitations and Maryland's Economic Loss Rule.  For the reasons discussed below, UtiliQuest's Motion to Dismiss these claims shall be denied, but One Call's Motion to Dismiss Hopke's claims for negligent performance of an undertaking and negligent misrepresentation shall be granted.

**A.  Hopke Has Sufficiently Pled a Claim for Negligent Performance of an Undertaking and Negligent Misrepresentation.**

---

[5] For the reasons discussed in Sections III and IV of this Opinion, One Call's Motion to Dismiss Hopke's Crossclaim will be denied, as well.  I need not address the Motion separately, as the arguments overlap with the arguments in One Call's Motion to Dismiss Hopke's Amended Crossclaim.

UtiliQuest and One Call assert that Hopke cannot recover on the basis of negligent performance of an undertaking or negligent misrepresentation because such liability only applies to physical harm to another party and, in the present case, Hopke asserts only economic loss. ECF No. 95-1, at 10-11; ECF No. 104-1, at 13-14. UtiliQuest and One Call's arguments overlook Hopke's amended allegations in its cross claim which specifically allege a serious risk of physical harm.

As referenced above, Hopke's Amended Crossclaim specifically alleges that UtiliQuest and One Call "knew, or should have known, of the foreseeable danger posed by inaccurately marking the underground facilities to Hopke and other excavators and/or subcontractors at the Project Site." ECF No. 91, at ¶¶ 37, 65. Hopke alleges that this danger arose out of UtiliQuest's failure to accurately mark all of Pepco's lines and One Call's failure to properly review UtiliQuest's markings and correctly mark the additional lines which UtiliQuest had failed to mark. *Id.* at ¶¶ 36, 64. Drawing all inferences in Hopke's favor, as I must at the motion to dismiss stage, I find that Hopke has sufficiently alleged that its employees were exposed to a risk of harm when they began potholing on December 15, 2017, based on an inaccurate set of markings.

UtiliQuest separately argues that Hopke cannot prevail on a claim for negligent misrepresentation because "there is no allegation in the Amended Cross-Claim that UtiliQuest made a false statement, or warranted to Hopke that the Pepco facilities were located where they were." ECF No. 95-1, at 13. To establish a claim for negligent misrepresentation, the plaintiff must allege, among other things, that the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136, 916 A.2d 257, 273 (2007); *Accord Central Truck Center, Inc. v. Central GMC, Inc.*, 194 Md.App. 375, 395 4 A.3d 515, 526 (Md. Ct. Spec. App. 2010).

28

Hopke clearly meets this standard.  Hopke alleges that UtiliQuest, in direct response to the December 8, 2017 and December 10, 2017 "Miss Utility" tickets, identified and marked some underground facilities in and around the area where the Incident occurred at the Project Site."  ECF No. 91, at ¶ 18.  Specifically, Hopke alleges that "the Miss Utility ticket responses and resultant markings indicated that UtiliQuest only located four . . . Pepco lines at the Project Site."  *Id.* at ¶ 20.  According to Hopke's Amended Crossclaim, these markings and ticket responses were false.  "UtiliQuest performed a damage investigation, which revealed that an additional four . . . to six . . . . P[epco] lines were at the location of the Project Site, but they were never located or marked by UtiliQuest, and were not identified by P[epco] or One Call."  *Id.* at ¶ 28.

Accordingly, Hopke has sufficiently pled claims for negligent performance of an undertaking and negligent misrepresentation.

### B.  Hopke Has Sufficiently Pled a Claim for Breach of Contract.

UtiliQuest and One Call argue that Hopke cannot recover on a breach of contract claim because it was not intended to be a beneficiary of the contract between Pepco and UtiliQuest and/or Pepco and One Call.  ECF No. 95-1, at 13-14; 104-1, at 16.  Instead, they argue that Hopke has only alleged facts supporting an inference that it was an incidental beneficiary.  *Id.*

In Maryland, to recover under a breach of contract claim as a third-party beneficiary, one must show that the parties to the contract intended that the third-party benefit from it.  *Shillman v. Hobsetter*, 249 Md. 678, 687, 241 A.2d 570, 575 (1968); *Collings v. MGC Mortgage, Inc.*, No. 14-CV-02973, 2015 WL 13611831, at *1, *6-*7 (D. Md. Feb. 10, 2015).  In contrast, an incidental beneficiary benefits from the contract even though the contracting parties did not intend it to.  *Shillman*, 249 Md. at 688.  Such incidental beneficiaries have no rights against the promisee or promisor.  *Id.*

In reference to UtiliQuest, Hopke pleads that UtiliQuest had a contract with Pepco, under which it was responsible for accurately locating and marking underground facilities at the Project Site "*for excavators and others performing work* at the Project Site, to reduce the risk of damage and ensure safe excavations."  ECF No. 91, at ¶ 16-17 (emphasis added).  Further, Hopke alleges One Call, through its contract with Pepco, was responsible for "overseeing the potholing work *done by Hopke.*"  *Id.* at ¶ 22 (emphasis added).  Both allegations allow for the inference that the contracting parties intended the contract to benefit Hopke.  *Cf. McRae v. Westcor Land Title Insurance,* No. RWT-16-2332, 2017 WL 1239682, at *1, *2 (D. Md. Mar. 17, 2017) (finding a failure to state a claim for breach of contract where there was no indication that plaintiffs were intended to be third-party beneficiaries).

Although the parties contest the precise nature of the UtiliQuest's and One Call's responsibilities pursuant to their contracts with Pepco, as discussed, the types of factual inquiries which UtiliQuest and One Call ask the Court to resolve are outside the scope of the Court's role at the current stage.  *See Edwards*, 178 F.3d 243–44 ("[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'") (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  One Call alleges, without support, that its "contractual duty . . . to P[epco] [was] to protect P[epco]'s facilities from contractors like Hopke and not the other way around.  The intended beneficiaries, in addition to P[epco], are the public, not contractors who fail to comply with statutory requirements for excavators."  ECF No. 104-1, at 16. *See, e.g.* ECF No. 104-1, at 2 (asserting that One Call was contracted to provide damage prevention support); ECF No. 107, at 2 (asserting that One Call was contracted to provide damage prevention support).  Without the contract and discovery regarding the parties' intention when

entering into the respective contract, the Court cannot accurately determine the veracity of these allegations.  Hopke has alleged that UtiliQuest and One Call were retained by Pepco to provide accurate markings of Pepco's facilities such that Pepco's facilities, as well as the individuals working on or near them were protected.  Regardless of whether discovery proves these allegations true, they are sufficient for the purposes of a motion to dismiss.

### C.  The Statute of Limitations Bars Hopke's Claims for Negligent Performance of an Undertaking and Negligent Misrepresentation Against One Call.

In addition to the arguments listed above, UtiliQuest and One Call again argue that the statute of limitations bars each of Hopke's direct claims against them.  As previously discussed, at the motion to dismiss stage, courts normally do not resolve affirmative defenses such as statutes of limitation.  *State Farm Mutual Auto. Ins. Co.*, 381 F.Supp.3d at 557.  It must be clear from the face of the complaint that Hopke's claims are time-barred.  *Id.*  As it was with Midwest Mole's Complaint, it is unclear from Hopke's Amended Crossclaim when it became aware that UtiliQuest had failed to mark all of Pepco's facilities.  In fact, language in the Amended Crossclaim suggests that Hopke did not become aware of UtiliQuest's alleged failures until UtiliQuest completed and provided a damage investigation report related to the accident.  *See* ECF No. 91-1, at ¶ 28 ("Upon information and belief, after the Incident occurred, UtiliQuest performed a damage investigation, which revealed that an additional four . . . to six P[epco] lines were at the location of the Project Site, but they were never located or marked by UtiliQuest, and were not identified by P[epco] or One Call.").

However, it is apparent from Hopke's Amended Crossclaim that it had knowledge of the facts supporting its claims against One Call for negligent performance of an undertaking and negligent misrepresentation by the time the accident occurred.  According to Hopke's Amended Crossclaim, it was present for the potholing which was not done in compliance with Maryland

state law and is a significant part of its claims against One Call for negligent performance of an undertaking and negligent misrepresentation.   ECF No. 91-1, ¶ 77 ("One Call refused to allow Hopke to pothole to expose all of Pepco's underground facilities in accordance with industry standard and the Maryland Public Utilities Code and One Call failed to relay accurate information to Hopke regarding the existence and location of Pepco's underground facilities at the Project Site, including those allegedly damaged in the Incident."); *Id.* at ¶ 66 ("One Call knew, or should have known, of the foreseeable danger posed by its refusal to allow all of Pepco's underground facilities to be exposed during Hopke's potholing and its failure to comply with industry standards and the Maryland Public Utilities Code, to Hopke and other excavators and/or subcontractors at the Project Site.").   Although Hopke alleges that it was unaware of the law at the time of the potholing, ECF No. 91, at ¶ 24, it was aware of the facts which form the basis for its claim.   Ordinarily, ignorance of the law is not a basis for tolling the statute of limitations.   *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288, 297, 831 A.2d 1091, 1096 (2003); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).   Additionally, Midwest Mole, on behalf of Hopke, alleges that the statute of limitations could not have begun to run on each of its direct claims until Pepco filed suit against Midwest Mole because, before then, it would not have suffered any injury.   ECF No. 115, at 8. The argument is inconsistent with Hopke's position that it seeks relief not only for economic damages that arise out of Pepco's lawsuit, but the risk of harm that it was exposed to while potholing, as a result of One Call's failure to correct UtiliQuest's improper markings and prevention of Hopke from fully exposing Pepco's facilities.   Accordingly, Hopke's negligence claims against One Call began to accrue, at latest, on the day that the accident occurred – February 3, 2018 – and its claims against One Call – filed more than three years later – are barred by the statute of limitations.

Although Hopke was aware of some of the facts supporting its breach of contract claim against One Call, *Id.* at ¶ 87, it is not clear from Hopke's Amended Crossclaim that it was aware of the contract between Pepco and One Call three years before it sought to add the claim. Accordingly, dismissal of Hopke's breach of contract claim against One Call is inappropriate at this stage of the case. *See Shartsis Friese, LLP, v. J.P. Morgan Chase & Co.*, No. 08-1064 SC, 2009 WL 1765697, at *1-2 (N.D. Cal. June 19, 2009) (rejecting statute of limitations argument on a Motion for Judgment because it could not be conclusively determined, as a matter of law, that a party had knowledge of a contract's terms); *Lonergan v. Bank of America, N.A.*, No. 2:12–CV–04226–NKL, 2013 WL 176024, at *5 (W.D. Mo. Jan. 16, 2013) ("for the purpose of tolling the statute of limitations, parties are not charged with knowledge of the contents of a contract they signed when they allege that the relevant terms of that contract were concealed from them.").

## CONCLUSION

For the aforementioned reasons, I shall:

- GRANT Midwest Mole, Inc's Motion for Leave to File an Amended Third-Party Complaint;

- DENY UtiliQuest, LLC's Motion to Strike the Amended Crossclaim of William B. Hopke, Co., Inc.;

- DENY UtiliQuest, LLC's Motion to Dismiss Counts I and II of Midwest Mole, Inc's Third-Party Complaint and William B. Hopke, Co., Inc's Amended Crossclaim;

- DENY One Call Concepts Locating Services, Inc.'s Motion to Dismiss Counts VI and VII of Midwest Mole, Inc's Third-Party Complaint;

- DENY UtiliQuest, LLC's Motion to Dismiss Counts III, IV, and V of William B. Hopke, Co., Inc's Amended Crossclaim;

- DENY One Call Concepts Locating Services, Inc.'s Motion to Dismiss William B. Hopke, Co., Inc's Crossclaim;

- DENY One Call Concepts Locating Services, Inc.'s Motion to Dismiss Count VI, VII, and X of William B. Hopke, Co., Inc's Amended Crossclaim; and

- GRANT One Call Concepts Locating Services, Inc.'s Motion to Dismiss Counts VIII and IX of William B. Hopke, Co., Inc's Amended Crossclaim.

  So ordered.

_____/s/_____

Date: November 30, 2022                     Ajmel A. Quereshi
                                            U.S. Magistrate Judge